DECISION IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, John Willhoit, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability compensation ("PTD") and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section M, Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. In her decision, (attached as Appendix A) the magistrate determined relator had not demonstrated that the commission abused its discretion in denying his application for PTD compensation and recommended that relator's request for a writ of mandamus be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision contending, among other things, that the magistrate has misconstrued several of his arguments. Further, relator states that the commission did not follow the direction of this court when it remanded a prior decision of the commission involving this same relator wherein a writ of mandamus was granted ordering the commission to vacate its order denying PTD compensation and enter a new order either granting or denying the requested compensation. In that decision, this court noted that the commission's order failed to explain how relator's skills were transferable to sedentary employment and that the commission had abused its discretion in finding transferability of skills to support a denial of PTD compensation. On remand, the matter was heard before a different staff hearing officer ("SHO").
 {¶ 4} On remand, the second SHO relied upon the reports of Dr. Hanington and Dr. Hyde and found that relator retained "physical functional capacity to perform some sedentary employment activities." The SHO further found that relator was capable of performing the following jobs immediately; stuffer; sorter; final assembler; inspector, eye glass frame; machine engraver I; service clerk; maintenance service dispatcher; order clerk, food and beverage; and surveillance system monitor. Therefore, the SHO found that relator was capable of sustained remunerative employment and was not permanently and totally disabled.
 {¶ 5} Contrary to relator's objections, the SHO did not ignore this court's previous direction. Rather, the SHO concluded that relator had no special training or special vocational skills and that his marginal education did not prevent him from learning skills to perform semi-skilled employment or that he would not be able to acquire the necessary skills to perform entry level employment activities in such employment. We therefore find relator's objections to be without merit. As the record contains some evidence to support the commission's findings, we find no abuse of discretion.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
 LAZARUS, P.J., and BRYANT, J., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. John Willhoit, : Relator, : v. : No. 03AP-731 Industrial Commission of Ohio : (REGULAR CALENDAR) and City of Cincinnati, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 29, 2004 Crowley, Ahlers Roth Co., L.P.A., and Edward C. Ahlers,
for relator.
Jim Petro, Attorney General, and Phil Wright, Jr., for respondent Industrial Commission of Ohio.
Augustine Giglio, Assistant City Solicitor, for respondent City of Cincinnati.
 IN MANDAMUS {¶ 7} Relator, John Willhoit, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
 Findings of Fact: {¶ 8} 1. Relator sustained a work-related injury on January 22, 1996, and his claim has been allowed for the following conditions:
Left hamstring strain; lumbosacral strain; medial meniscus tear left knee; patellar chondromalacia; cruciate ligament tear left knee; aggravation pre-existing arthritis of the lumbar spine.
 {¶ 9} 2. On June 22, 1999, relator filed an application for PTD compensation. Pursuant to his application, he was 65 years old, had a sixth grade education, was able to read and do basic math, could write, but not well, and his work history included jobs as a laborer, bartender, and a serviceman in the United States Army.
 {¶ 10} 3. The commission had relator examined by Dr. Kenneth R. Hanington who examined relator on September 3, 1999. Dr. Hanington concluded that relator had reached maximum medical improvement ("MMI"), assessed a five percent permanent partial rating regarding the conditions of meniscus tear, patella chondromalacia, and cruciate ligament tear of the left knee. Dr. Hanington also noted that relator continues with arthritic symptoms. Dr. Hanington opined that relator had a ten percent impairment rating regarding the allowance for the aggravation of preexisting arthritis of the lumbar spine. Dr. Hanington opined that relator had a 15 percent permanent partial impairment for all the allowed conditions and noted that relator was unable to return to his former position of employment. Pursuant to his report, and the completion of an occupational activity assessment, Dr. Hanington opined that relator was capable of sedentary employment.
 {¶ 11} 4. An employability assessment was prepared by William Hyde, M.Ed. Mr. Hyde opined that relator possessed the skills necessary to perform some unskilled and semi-skilled sedentary jobs at the present time. Mr. Hyde noted that relator's age was a barrier regarding his ability to return to and compete in the workforce because of reduced market ability. After reviewing his work history, Mr. Hyde noted that relator had demonstrated the ability to develop academic skills required to perform a number of entry-level unskilled and some semi-skilled jobs. Mr. Hyde concluded that relator's education was adequate to meet the basic demands of a number of entry-level jobs, and that his stable work history was a positive factor. Mr. Hyde identified several jobs relator could perform immediately and a number of other jobs that relator could perform following remediation.
 {¶ 12} 5. Relator's application was heard before a staff hearing officer ("SHO") on January 4, 2000, and resulted in an order denying the requested compensation. The SHO relied upon the report of Dr. Hanington and concluded that relator could return to sedentary employment within the restrictions and abilities noted by Dr. Hanington. The SHO relied heavily upon the employability assessment and concluded that relator had skills which would be transferable to other employment.
 {¶ 13} 6. Relator's request for reconsideration was denied by order of the commission mailed February 9, 2000.
 {¶ 14} 7. Thereafter, relator filed a mandamus action in this court which ultimately resulted in a writ of mandamus being granted ordering the commission to vacate its order denying PTD compensation and to enter a new order either granting or denying the requested compensation. This court found that a vocational expert's report, upon which the commission heavily relied, did not support the commission's conclusion that the skills relator acquired in using power and auxiliary equipment were transferable to sedentary employment. Furthermore, this court noted that the commission's order failed to explain how those skills were transferable to sedentary employment and that the commission had abused its discretion in finding transferability of skills to support a denial of PTD compensation.
 {¶ 15} 8. On remand, the matter was heard before an SHO on May 6, 2003, and resulted in an order denying the requested compensation. The second SHO again relied upon the report of Dr. Hanington and concluded that relator retains the physical functional capacity to perform employment activities which are sedentary in nature. The SHO also relied upon the employability assessment report prepared by Mr. Hyde. The SHO further conducted its own analysis stating as follows:
The Staff Hearing Officer finds that the injured worker is 64 years of age with a sixth grade education and no GED. The Staff Hearing Officer further finds that the injured worker has a work history as a bartender and as a highway maintenance worker. The Staff Hearing Officer further finds that injured worker has no special training or special vocational skills. The Staff Hearing Officer further finds that the injured worker is able to read and perform basic math well but is not able to write well.
The Staff Hearing Officer finds that the injured worker's age of 64 years is a barrier to the injured worker with regard to his ability to return to and compete in the work force. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the injured worker from returning to work. The Staff Hearing Officer further finds that the injured worker's marginal education is a barrier with regard to the injured worker's ability to return to work. The Staff Hearing Officer further finds, however, that the injured worker has never had greater than a marginal education and it has not prevented him from working in the past. The Staff Hearing Officer further finds that not only has the injured worker's marginal education not prevented him from working, it has not prevented him from learning the skills necessary to perform semi-skilled employment. The Staff Hearing Officer further finds that the injured worker's ability to read is an asset to the injured worker with regard to his ability to learn the new work rules, work skills and work procedures necessary to perform some other type of employment. Based upon the report of Mr. Hyde[,] the Staff Hearing Officer finds that there is no basis for determining that the injured worker would not be able to acquire the skills necessary to perform entry level employment activities. The Staff Hearing Officer further finds, based upon the reports of Mr. Hyde, that the injured worker possesses the skills necessary to perform some unskilled and semi-skilled sedentary jobs at the present time. The Staff Hearing Officer further finds that there is no basis for determining that the injured worker would not be able to benefit from on the job training. Based upon the report of Dr. Hanington[,] the Staff Hearing Officer finds that the injured worker retains the physical functional capacity to perform some sedentary employment activities. The Staff Hearing Officer further finds that the injured worker is capable of performing the following jobs immediately: stuffer; sorter; final assembler; inspector, eye glass frame; machine engraver I; service clerk; maintenance service dispatcher; order clerk, food and beverage; and surveillance system monitor. The Staff Hearing Officer therefore finds that the injured worker is capable of sustained remunerative employment and is not permanently and totally disabled. Injured worker's application for permanent and total disability, filed 06/22/1999, is there-fore denied.
 {¶ 16} 9. Thereafter, by order mailed July 2, 2003, the commission denied relator's request for reconsideration.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 20} Relator raises four arguments in this mandamus action: (1) the commission relied exclusively upon its own physician; (2) the commission ignored the vocational report of Dr. Jennifer Stoeckel; (3) the commission failed to comply with this court's decision as the commission did not address the issue of transferability of skills; and (4) the commission abused its discretion by misapplying Stephenson. For the reasons that follow, this magistrate finds that relator is not entitled to a writ of mandamus.
 {¶ 21} In State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575, the Ohio Supreme Court rejected the assertion that a treating physician's report is entitled to enhanced weight and, citing State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18, noted that the commission has exclusive authority to evaluate evidentiary weight and credibility. As such, providing that Dr. Hanington's report constitutes some evidence and is not flawed in and of itself, the commission does not abuse its discretion in relying upon the report of its specialist. Inasmuch as relator does not challenge Dr. Hanington's report in and of itself, his first argument lacks merit.
 {¶ 22} Relator also contends that the commission ignored the vocational report of Dr. Jennifer Stoeckel. Pursuant to State exrel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, the commission has discretion to accept one vocational report while rejecting another vocational report. Furthermore, to bind the commission to any rehabilitation report's conclusions makes the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to Stephenson. See State exrel. Singleton v. Indus. Comm. (1994), 71 Ohio St.3d 117. As such, relator's second argument is not well-taken.
 {¶ 23} Relator also contends that the commission was ordered by this court to enumerate and discuss what skills relator had which were transferable to sedentary employment. Relator has mischaracterized this court's prior decision.
 {¶ 24} When this case was previously before this court, a writ of mandamus was granted because the commission had relied upon a vocational report to conclude relator had acquired skills in using power and auxiliary equipment which would be transferable to sedentary employment without explaining how those skills would transfer to sedentary employment. This court agreed with the magistrate's conclusion that the commission abused its discretion in finding transferability of skills to support the denial of PTD compensation. When the matter was remanded to the commission, the commission was ordered to vacate its prior order denying PTD compensation and to issue a new order, either granting or denying compensation. The commission conducted another hearing, before a different SHO, who concluded that relator's application for PTD compensation should be denied. With regard to the issue of transferable skills, the SHO concluded that relator had no special training or special vocational skills, that his marginal education has not prevented him from learning the skills necessary to perform semi-skilled employment, and that there was no evidence to indicate that relator would not be able to acquire the skills necessary to perform entry-level employment activities. In essence, the SHO that concluded that relator had the ability to learn new skills and entry-level sedentary employment without indicating that relator had any skills which were specifically transferable to sedentary employment. In the present case, the commission did not improperly conclude that relator had transferable skills and did not assert that the vocational evidence would support a finding that he did have transferable skills. Contrary to relator's assertions, the commission was not required to find, identify, and explain what transferable skills the first SHO concluded that he had. Instead, the commission was ordered to issue a new order which complied with the law. Relator's third argument lacks merit as well.
 {¶ 25} Lastly, relator argues that the commission abused its discretion in this case, and routinely abuses its discretion in other cases, by misapplying the law from Stephenson. Relator contends that, by considering unskilled entry-level jobs in the market place when an employee does not have any transferable skills and when the commission does not specifically identify other skills which the employee can acquire, the commission actually applies a "de facto impairment standard" in contravention of Stephenson. This magistrate disagrees.
 {¶ 26} In support of his argument, relator cites the last sentence of the following paragraph:
In making a determination of the degree to which the claimant's ability to work has been impaired, and to answer the query as to whether the claimant is unfit to work at any sustained remunerative employment, the commission must look to a broad number of pertinent factors. It must review all the evidence in the record including the doctors' reports and opinions. The commission must also review any evidence relative to the claimant's age, education, work record, psychological or psychiatric factors if present, and that of a sociological nature. The commission should consider any other factors that might be important to its determination of whether this specific claimant may return to the job market by utilizing her past employment skills, or those skills which may be reasonably developed.
Stephenson at 170.
 {¶ 27} Based on this last sentence, relator contends that it is an abuse of discretion for the commission to deny PTD compensation to a claimant who is otherwise capable of performing sedentary work activity based upon the determination that there are some unskilled jobs in the market place. Relator's argument completely ignores the rest of the paragraph above-quoted. Doctors determine "impairment": "the amount of a claimant's anatomical and/or mental loss of function." Id. at 171. The commission determines "disability": "the effect that the physical impairment has on the claimant's ability to work." Id. However, in making its determination as to "the effect that the physical impairment has on the claimant's ability to work," the commission is deciding "the degree to which the claimant's ability to work has been impaired." Id. at 170-171. In reaching this decision, the commission must review any evidence relative to claimant's age, education, work record, psychological or psychiatric factors if present, and that of a sociological nature. Further, the commission should consider any other factors that might be important to its determination of whether claimant may return to the job market by utilizing past employment skills, or those skills which may be reasonably developed. This does not require the commission to ignore the fact that unskilled jobs exist in the market place and that certain claimants can perform such jobs. The commission did not apply an incorrect standard in this case and relator's last argument fails.
 {¶ 28} Based on the foregoing, It is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE